GEORGE HARVEY CAMPBELL, INDIVIDUALLY AND AS REPRESENTATIVE OF THE CITIZENS AND TAXPAYERS OF DURHAM, NORTH CAROLINA v. FIRST BAPTIST CHURCH OF THE CITY OF DURHAM, AN UNINCORPORATED ASSOCIATION; THE CITY OF DURHAM; THE REDEVELOPMENT COMMISSION OF THE CITY OF DURHAM; AND THE UNITED STATES OF AMERICA, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, JAMES T. LYNN, SECRETARY OF THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

No. 42

(Filed 6 November 1979)

**Municipal Corporations §§ 4.5, 22.3— exchange of property between redevelopment commission and church—bid or appraisal requirements**

An exchange of real property between a redevelopment commission and a church constitutes a "sale" which must comply with the advertisement and bid requirements of G.S. 160A-514(d) unless the redevelopment commission elects to treat it as a "private sale" to a nonprofit association under the provisions of G.S. 160A-514(e)(4), in which case the commission must hold a public hearing and obtain a valuation of "the fair value of the property agreed upon by a committee of three professional appraisers."

Justice BROCK did not participate in the consideration or decision of this case.

ON discretionary review pursuant to G.S. 7A-31 to review the decision of the North Carolina Court of Appeals reported in 39 N.C. App. 117 (1978) reversing the judgment of *Brewer, J.,* entered at 13 May 1974 Session of DURHAM Superior Court.

Plaintiff, George Harvey Campbell, individually and as representative of the citizens and taxpayers of Durham, North Carolina, instituted this action seeking to set aside an exchange of real estate between the First Baptist Church and the Redevelopment Commission of the City of Durham made pursuant to the urban renewal project for the Durham Central Business District.

The pertinent facts involved in this appeal may be summarized as follows:

In March, 1972, pursuant to Redevelopment Plan NC R-26, the Redevelopment Commission acquired by condemnation a tract of land known as the Markham property. This parcel of land, bounded by Cleveland, Elliot, and Roxboro Streets, contained approximately 44,614 square feet and was valued by a jury in the condemnation proceedings to be worth $164,300.

The second tract of land involved in the exchange was a strip of land fronting on Roxboro Street and owned by the First Baptist Church. This parcel was 12 feet wide and 234 feet long and contained approximately 2,803 square feet.

On 4 February 1970, the Redevelopment Commission adopted a resolution approving the idea of an exchange of the two tracts. On 16 October 1972, the Durham City Council approved the land exchange between the Redevelopment Commission and the Church. On 7 November 1972 and 14 November 1972, respectively, the Redevelopment Commission placed two advertisements with respect to the proposed exchange in the *Durham Morning Herald*. The advertisement listed $15,614.83 as the proposed price for the Markham property and gave $17,500 as the proposed price of the Church property. The published notice further indicated that the Redevelopment Commission would pay to the Church the sum of $1,885.17, which represented the difference between the fair market values of the two tracts. Defendants admitted in their Answers that there was no advertisement for bids pursuant to G.S. 160A-514(d). It was also conceded in defendants' briefs that the provisions of G.S. 160A-514(e) were not followed. Deeds effecting the exchange were duly delivered and were recorded on 19 January 1973.

Plaintiff instituted this action on 7 February 1973 seeking to void the deeds on grounds that the exchange did not comport with the statutory requirements governing transfers of land by the Redevelopment Commission. Plaintiff also challenged the exchange on grounds that it constituted an arbitrary and capricious abuse of discretion on the part of the Commission and that it violated the Establishment Clause of the First Amendment to the United States Constitution. The United States Department of Housing and Urban Development was joined as a party defendant but did not participate in the trial or any subsequent proceeding. Trial was begun on 23 January 1974 and on 28 June 1974 final judgment was entered in the case. The trial judge found as a fact that the parties to the exchange were proceeding under G.S. 160A-514(c) and that they considered the transaction an "exchange" rather than a sale or a private sale. He determined that the transaction was in all respects lawful and that each party to the exchange held good title to the property received upon the exchange.

Plaintiff appealed and the Court of Appeals, in an opinion by Judge Hedrick with Judges Brock and Mitchell concurring, reversed the trial court and held that the purported exchange of properties was in essence a "private sale" and as such must comply with the statutory requirements of G.S. 160A-514(e)(4).

Defendants' petition for discretionary review pursuant to G.S. 7A-31 was denied by this Court on 6 March 1979. On 1 May 1979 we granted defendants' petition to reconsider our denial of the petition for discretionary review.

*Blackwell M. Brogden for plaintiff appellee.*

*Haywood, Denny & Miller, by Egbert L. Haywood, for defendant appellant First Baptist Church of the City of Durham.*

*William Thornton for defendant appellant City of Durham.*

*Edwards & Manson, by Daniel K. Edwards, for defendant appellant Redevelopment Commission of the City of Durham.*

BRANCH, Chief Justice.

The sole question presented for review in this case is whether the trial court erred in sustaining the validity of an exchange of real estate between the Redevelopment Commission of the City of Durham and the First Baptist Church of the City of Durham. The Court of Appeals reversed the trial court, holding the conveyance void from its inception due to the failure of the Commission to comply with certain procedural requirements set out in G.S. 160A-514(e) (formerly G.S. 160-464(e)).

Pursuant to Chapter 160A of the General Statutes, a redevelopment commission is empowered to "sell, exchange, transfer . . . or otherwise encumber or dispose of any real or personal property . . . ." G.S. 160A-512(6) (formerly G.S. 160-462(6)). This power is explicitly made "subject to the provisions of G.S. 160A-514."

The relevant portions of G.S. 160A-514 are as follows:

(c) A commission may sell, exchange, or otherwise transfer real property or any interest therein in a redevelopment project area to any redeveloper for residential, recreational, commercial, industrial or other uses or for public use in ac-

cordance with the redevelopment plan, subject to such covenants, conditions and restrictions as may be deemed to be in the public interest or to carry out the purposes of this Article; provided that such sale, exchange or other transfer, and any agreement relating thereto, may be made only after, or subject to, the approval of the redevelopment plan by the governing body of the municipality and after public notice and award as specified in subsection (d) below.

(d) Except as hereinafter specified, no sale of any property by the commission or agreement relating thereto shall be effected except after advertisement, bids and award as hereinafter set out. The commission shall, by public notice, by publication once a week for two consecutive weeks in a newspaper having general circulation in the municipality, invite proposals and shall make available all pertinent information to any persons interested in undertaking a purchase of property ·or the redevelopment of an area or any part thereof. The commission may require such bid bonds as it deems appropriate. After receipt of all bids, the sale shall be made to the highest responsible bidder. All bids may be rejected. All sales shall be subject to the approval of the governing body of the municipality. Nothing herein, however, shall prevent the sale at private sale without advertisement and bids to the municipality or other public body, or to a nonprofit association or corporation operated exclusively for educational, scientific, literary, cultural, charitable or religious purposes, of such property as is specified in subdivisions (1), (2), (3), or (4) of subsection (e) of this section, provided that such sale is in accordance with the provisions of said subdivisions. The commission may also sell personal property of a value of less than five hundred dollars ($500.00) at private sale without advertisement and bids.

(e) In carrying out a redevelopment project, the commission may:

*    *    *

(4) After a public hearing advertised in accordance with the provisions of G.S. 160A-513(e), and subject to the approval·of the governing body of the municipality, convey to a nonprofit association or corporation

organized and operated exclusively for educational, scientific, literary, cultural, charitable or religious purposes, no part of the net earnings of which inure to the benefit of any private shareholder or individual, such real property as, in accordance with the redevelopment plan, is to be used for the purposes of such associations or corporations. Such conveyance shall be for such consideration as may be agreed upon by the commission and the association or corporation, which shall not be less than the fair value of the property agreed upon by a committee of three professional real estate appraisers currently practicing in the State, which committee shall be appointed by the commission. All conveyances made under the authority of this subsection shall contain restrictive covenants limiting the use of property so conveyed to the purposes for which the conveyance is made.

Plaintiff in this action seeks to have the conveyance set aside because of the failure of the Commission to comply with the hearing and appraisal requirements of G.S. 160A-514(e)(4). Plaintiff maintains, and correctly so, that subsection (c) by its terms authorizes a commission to sell or exchange real estate, "provided that such *sale, exchange or other transfer* . . . may be made *only . . . after public notice and award as specified in subsection (d) below.*" (Emphasis added.)

Subsection (d) states the general rule that no sale is valid unless the statutory requirements of notice, solicitation of bids, and award are followed. The section does provide, however, that in the case of a "private sale" to a nonprofit corporation the commission need not comply with the advertisement and bid requirements but may, in the alternative, comply with the provisions of subsection (e).

Plaintiff contends that even though subsection (d) refers only to "sales," that term incorporates the term "exchanges" by virtue of the proviso of subsection (c) which requires that sales and exchanges comply with subsection (d). Plaintiff further argues that the "proviso" at the end of subsection (d) mandates compliance with the provisions of subsection (e) in any case involving a nonprofit association. He relies on the following statutory language in support of this contention:

Nothing herein, however, shall prevent the sale at a *private sale* without advertisement and bids . . . to a *nonprofit association* . . . of such property as is specified in subdivisions (1), (2), (3), or (4) of subsection (e) of this section, provided that such sale is in accordance with the provisions of said subdivisions. (Emphasis added.)

In short, plaintiff's position is that subsection (c) authorizes exchanges so long as they meet the requirements of subsection (d) and that subsection (d) requires compliance with subsection (e) where the exchange is between the Commission and a nonprofit association.

Plaintiff argues alternatively that subsection (d) is irrelevant and that when religious organizations are involved, conveyances are governed solely by the provisions of subsection (e). Plaintiff notes that while subdivisions (1), (2), and (3) of subsection (e) refer explicitly to "private sales," subdivision (4) speaks only of "conveyances." Since the term "conveyance" also obviously encompasses an "exchange," plaintiff submits that this subdivision, standing alone, covers any exchange between a commission and a nonprofit association and mandates compliance with the procedural provisions therein.

Defendants, on the other hand, point to the language in subsection (e) which states that, "[i]n carrying out a redevelopment project, the commission *may* . . . ." They contend that the use of the word "may" renders the section non-obligatory. While conceding that they did not comply with the provisions of subsection (e), they maintain that subsection (e) is an alternative to the procedural requirements of subsection (d) and that they were free to choose not to proceed under the provisions of subsection (e) and instead to elect to exchange properties pursuant to subsections (c) and (d). Defendants submit that subsection (d) by its own terms refers only to "sales" and to "private sales" and does not mention "exchanges" of property. For this reason, they maintain that the requirements of subsection (d) are not applicable to this transaction. They urge strongly that solicitation of bids is inappropriate in cases where an exchange of specific properties is contemplated and that they have complied with the requirements of subsection (d) insofar as publication and approval by the governing board of the municipality are concerned.

The Court of Appeals held that the exchange of properties in this case "must be in compliance with all of the requirements of [subsection (e)]." We agree.

Subsection (d) states clearly that "*no sale* of any property by the commission or agreement relating thereto *shall be effected except after advertisement, bids and award* as hereinafter set out." (Emphasis added.) The proviso in subsection (c) states just as clearly that exchanges, as well as sales, must comport with the procedural requirements of subsection (d). In only two instances does subsection (d) permit a departure from the general rule requiring advertisement and bids. One of those exceptions, and the only one which concerns us here, permits a commission to engage in a private sale with a nonprofit association "without advertisement and bids . . . *provided* that such sale is in accordance with the provisions of [subsection (e)]." (Emphasis added.)

It is also pertinent to note that two subsections (a) and (b), outline certain other instances where advertisement and bids are not required. Under the doctrine of *expressio unius est exclusio alterius*, the mention of specific exceptions implies the exclusion of others. *Walla Walla v. Walla Walla Water Co.*, 172 U.S. 1, 43 L.Ed. 341, 19 S.Ct. 77 (1898).

In light of the specifically outlined exceptions to the general rule, coupled with the specific inclusion of "exchanges" within the proviso of subsection (c), we believe the intent of the Legislature to include exchanges within the general rule requiring advertisement and bids is clear. We are aware, as defendants argue, that requiring compliance with a bidding procedure when an exchange is contemplated is tantamount to requiring a useless act. When a commission seeks out a particular tract of land suited for a particular purpose, the solicitation of bids would be nothing more than a sham. However, as we read the statutory language, it is clear that an "exchange" is included within the provisions of subsection (d) unless the commission elects to treat it as a private sale and proceed under the provisions of subsection (e). The duty of a court is to construe a statute as it is written. It is not the duty of a court to determine whether the legislation is wise or unwise, appropriate or inappropriate, or necessary or unnecessary. *Olsen v. Nebraska*, 313 U.S. 236, 85 L.Ed. 1305, 61 S.Ct. 862 (1941).

We recognize that subsection (e) uses the term "may," and that the use of "may" generally connotes permissive or discretionary action and does not mandate or compel a particular act. *Felton v. Felton,* 213 N.C. 194, 195 S.E. 533 (1938). We also note, however, that the word "may" is used in every other subsection of G.S. 160A-514, save one. Ordinarily it is reasonable to presume that words used in one place in the statute have the same meaning in every other place in the statute. *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 79 L.Ed. 211, 55 S.Ct. 50 (1934); *Wells v. Housing Authority,* 213 N.C. 744, 197 S.E. 693 (1938). As used in the other subsections of the statute, the phrase, "the commission may" serves as the vehicle through which the legislative grant of authority is conferred. Municipal corporations are creatures of the Legislature and all of their powers are determined by the Legislature. *Starbuck v. Havelock,* 252 N.C. 176, 113 S.E. 2d 278 (1960). It is a universal rule that municipalities can exercise only those powers which are expressly or impliedly conferred. *Buffalo v. Joslyn,* 527 P. 2d 1106 (Wyo. 1974). As we read the statute, each subsection confers upon a redevelopment commission the authority to perform certain acts necessary to carry out the redevelopment project, and the use of the word "may" merely denotes that the commission is not *required* to do each and every act authorized in G.S. 160A-514. However, should a commission elect to exercise the authority conferred upon it by a particular section, then the procedural requirements "shall" be followed. *See, e.g.,* G.S. 160A-514(c). Thus, we construe the use of the word "may" in subsection (e)(4) as not being mandatory in the sense that it requires a commission to convey to a nonprofit association. Whether there shall be a conveyance is a matter in the discretion of the commission. However, once a commission decides to exercise its authority to so convey, that conveyance must be after a public hearing and "shall be for such consideration as may be agreed upon by the commission and the association or corporation, which shall not be less than the fair value of the property agreed upon by a committee of three professional real estate appraisers currently practicing in the State, which committee shall be appointed by the commission."

Our holding today is not inconsistent with the decisions of other jurisdictions faced with the question of whether the term "sale" includes an "exchange" and whether the same procedural

safeguards apply equally to both. *See, e.g., Buffalo v. Joslyn, supra.* The statute involved here and similar statutes in other jurisdictions provide safeguards designed to guard against potential abuse on the part of a municipal redevelopment commission and to reinforce the notion that such commission should proceed openly and with prudence. As noted in *Buffalo v. Joslyn, supra,* "it is important to the officials of a city and the residents thereof that any appearance of unfairness be guarded against." Compliance with the procedural guidelines serves to notify the members of the community that a disposition of public property is about to take place and "to throw a safeguard around land owned by the City in order that it might not be disposed of without due consideration." *McKinney v. Abilene,* 250 S.W. 2d 924 (Tex. Civ. App. 1952).

The primary rule of statutory construction is that the intent of the Legislature controls. *In re Hardy,* 294 N.C. 90, 240 S.E. 2d 367 (1978). The intent of the Legislature may be ascertained from the phraseology of the statute as well as the nature and purpose of the act and the consequences which would follow from a construction one way or another. *In re Hardy, supra.* A court should always construe the provisions of a statute in a manner which will tend to prevent it from being circumvented. *See State v. Lipkin,* 169 N.C. 265, 84 S.E. 340 (1915). If the rule were otherwise, the ills which prompted the statute's passage would not be redressed.

In light of what we perceive to be the overall purpose and intent of the Legislature in enacting the comprehensive procedural framework for the disposition of real property by a redevelopment commission, we hold that, in the context of G.S. 160A-514, a private "exchange" is no different from a private "sale" in terms of its nature and effect. Thus, if a commission elects not to comply with the provisions of subsection (d), it must at least comply with the applicable provisions set out in subsection (e).

The Redevelopment Commission in this case did not comply with either section of the statute. The Commission did not solicit bids as required by G.S. 160A-514(d); nor did it hold a public hearing and obtain a valuation of "the fair value of the property agreed upon by a committee of three professional appraisers" as required by subsection (e). The conveyance of the Markham prop-

erty exceeded the authority granted to the Commission by the Legislature and is therefore void *ab initio*. *See Bagwell v. Brevard,* 267 N.C. 604, 148 S.E. 2d 635 (1966).

The decision of the Court of Appeals is

Affirmed.

Justice BROCK did not participate in the consideration and decision of this case.