DANIEL M. HLASNICK AND DARLENE HLASNICK v. FEDERATED MUTUAL IN-SURANCE COMPANY AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

No. 78PA00

(Filed 21 December 2000)

**Insurance— automobile—UIM—fleet policy—two-tiered coverage**

The Court of Appeals correctly concluded that a two-tiered UIM coverage endorsement was valid and enforceable where the purchaser of a fleet policy paid additional premiums to provide higher limits of UIM coverage to certain persons insured in excess of the statutory floor. The Financial Responsibility Act nowhere mandates that UIM coverage be equivalent for all per-

sons insured under an automobile policy and the Act expressly permits the insured to select a higher limit of UIM coverage than the minimal floor required by the statute.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 136 N.C. App. 320, 524 S.E.2d 386 (2000), affirming in part and reversing and remanding in part a judgment entered 3 November 1998 by Ellis (B. Craig), J., in Superior Court, Wake County. Heard in the Supreme Court 12 September 2000.

*Thompson, Smyth & Cioffi, L.L.P., by Theodore B. Smyth, for plaintiff-appellants.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Mallory T. Underwood, for defendant-appellee Federated Mutual Insurance Company.*

*DeBank & Honeycutt, by Douglas F. DeBank, for defendant-appellant State Farm Mutual Automobile Insurance Company.*

MARTIN, Justice.

On 18 August 1996 Daniel Hlasnick and his wife, Darlene Hlasnick (collectively the Hlasnicks), were injured in an automobile accident in Granville County. Mr. Hlasnick was driving a 1994 Dodge pickup truck carrying Mrs. Hlasnick as a passenger. The accident occurred when a vehicle owned and operated by Norman Smith (Smith) rear-ended the pickup truck. The pickup truck carrying Mr. and Mrs. Hlasnick was owned by Mr. Hlasnick's employer, RPM Lincoln Mercury, Inc. (RPM). Mr. Hlasnick worked for RPM as a general manager and was allowed to use RPM vehicles for personal errands without permission. Mr. and Mrs. Hlasnick were on a personal errand at the time of the accident.

Smith tendered the $25,000 limit of his liability insurance policy. Additionally, the Hlasnicks were covered by two personal auto policies issued by State Farm Mutual Automobile Insurance Company (State Farm). The State Farm policies provided $100,000 per person and $300,000 per accident of underinsured motorist (UIM) coverage. Federated Mutual Insurance Company (Federated) insured RPM as an additional insured on a commercial package or fleet policy issued to Glen Burnie Nissan, LLC (Glen Burnie). The policy contained an endorsement provision establishing two levels of UIM coverage:

$500,000 to any RPM director, officer, partner, or owner, and his or her family member; and $50,000 to other persons insured.

On 25 July 1997 the Hlasnicks brought a declaratory judgment action to determine the amount of UIM coverage under the Federated policy. On 3 November 1998 the trial court granted Federated's motion for summary judgment. The trial court concluded the Hlasnicks were entitled to $50,000 in UIM coverage from Federated and $200,000 in UIM coverage under each of the two State Farm policies. The trial court further concluded State Farm's coverage was primary and Federated's coverage was excess.

The Court of Appeals affirmed the trial court's conclusion that the Hlasnicks were entitled to $50,000 in UIM coverage under the fleet policy. *Hlasnick v. Federated Mut. Ins. Co.*, 136 N.C. App. 320, 322, 524 S.E.2d 386, 388 (2000). The Court of Appeals determined there was "no reason either in the Act or in public policy to prevent an insured from obtaining underinsured motorist coverage in excess of the statutory minimum for employees it consider[ed] particularly valuable." *Id.* at 326, 524 S.E.2d at 390. Additionally, the Court of Appeals reversed the trial court's determination that State Farm's coverage was primary.

This Court allowed discretionary review to consider (1) whether Federated's two-tiered UIM coverage is valid under the North Carolina Motor Vehicle Financial Responsibility Act; (2) whether Federated met the minimum requirements of the North Carolina Motor Vehicle Financial Responsibility Act in gaining Glen Burnie's selection of UIM coverage; and (3) whether Daniel Hlasnick was an RPM officer as defined within the Federated policy.

The Hlasnicks contend the Court of Appeals erroneously determined that Federated's UIM coverage endorsement provision was valid under the North Carolina Motor Vehicle Safety and Financial Responsibility Act. See N.C.G.S. §§ 20-279.1 to .39 (1993) (the Financial Responsibility Act). More particularly, the Hlasnicks argue the policy violates the Financial Responsibility Act because, although the UIM provision provides the statutorily mandated "floor" of UIM coverage to all persons insured, it impermissibly grants $500,000 in UIM coverage to RPM directors, officers, partners, and owners. We disagree and affirm the Court of Appeals on this issue.

At the outset we note that the parties to a contract of insurance generally "have the right to limit or expand their liability by writing

policies with narrow or broad coverage." 4 Eric Mills Holmes, *Holmes' Appleman on Insurance 2d* § 22.1, at 352 (1998) [hereinafter *Holmes*]. Indeed, our state's legal landscape recognizes that, unless contrary to public policy or prohibited by statute, freedom of contract is a fundamental constitutional right. *American Tours, Inc. v. Liberty Mut. Ins. Co.*, 315 N.C. 341, 350, 338 S.E.2d 92, 98 (1986); *Nationwide Mut. Ins. Co. v. Aetna Life & Cas. Co.*, 283 N.C. 87, 93, 194 S.E.2d 834, 838 (1973); *Stephens v. Hicks*, 156 N.C. 239, 244, 72 S.E. 313, 316 (1911).

Within the context of automobile insurance, however, the Financial Responsibility Act prohibits the issuance of UIM coverage in limits "less than the financial responsibility amounts for bodily injury liability as set forth in G.S. 20-279.5." N.C.G.S. § 20-279.21(b)(4) (1993) (amended 1997). Section 20-279.5 sets forth the minimal limits for liability insurance coverage as follows:

> if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and cost, of not less than twenty-five thousand dollars ($25,000) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than fifty thousand dollars ($50,000) because of bodily injury to or death of two or more persons in any one accident . . . .

N.C.G.S. § 20-279.5(c) (1993) (amended 1999).

Thus, automobile insurance policies subject to the Financial Responsibility Act must provide a minimal "floor" of UIM coverage. The issue in the present case is therefore whether, once Glen Burnie provided the statutorily required floor of UIM coverage to all persons insured, it was entitled, upon payment of additional premiums, to provide additional UIM coverage for RPM directors, officers, partners, and owners.

The Financial Responsibility Act expressly permits the insured to select a higher limit of UIM coverage than the minimal floor of coverage required by the statute. *See* N.C.G.S. § 20-279.21(b)(4). Indeed, the insured is permitted under the statute to categorically reject *any* UIM coverage. *Id.* Moreover, it is generally accepted that the insured should be able to negotiate for a "policy provision which is more favorable than that prescribed by statute." 4 *Holmes* § 22.1, at 363. This Court has held that the purchase of insurance coverage in excess of the minimal requirements of the Financial Responsibility Act is voluntary and allowed under the Act. *See Nationwide Mut.*

*Ins. Co. v. Aetna Life & Cas. Co.*, 283 N.C. at 93, 194 S.E.2d at 838; *Nationwide Mut. Ins. Co. v. Roberts*, 261 N.C. 285, 289, 134 S.E.2d 654, 658 (1964). *See also Nationwide Mut. Ins. Co. v. Massey*, 82 N.C. App. 448, 450, 346 S.E.2d 268, 270 (1986); *Government Employees Ins. Co. v. Herndon*, 79 N.C. App. 365, 367, 339 S.E.2d 472, 473 (1986).

The Financial Responsibility Act nowhere mandates that UIM coverage be equivalent for all persons insured under an automobile insurance policy. Appellants suggest the absence of *authorizing* language means the legislature did not intend to allow multiple levels of UIM coverage in the same policy. We disagree. In the absence of statutory proscription or public policy violation, it is beyond question that parties are free to contract as they deem appropriate— enabling legislation is not required. *Cf. Nationwide Mut. Ins. Co. v. Aetna Life & Cas. Co.*, 283 N.C. at 93, 194 S.E.2d at 838. As we have stated, " '[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and *limitations* not contained therein.' " *State v. Camp*, 286 N.C. 148, 152, 209 S.E.2d 754, 756 (1974) (quoting 7 Strong's North Carolina Index 2d *Statutes* § 5 (1968)) (emphasis added). Put simply, it is within the province of the legislature, not this Court, to place any new or additional restrictions on the issuance of UIM coverage not mandated by the Financial Responsibility Act.

Appellants nonetheless argue that section 20-279.21(b)(4)'s definition of "underinsured highway vehicle" prohibits the issuance of multi-tier UIM coverage. N.C.G.S. § 20-279.21(b)(4) provides:

An "uninsured motor vehicle" as described in subdivision (3) of this subsection, includes an "underinsured highway vehicle" which means a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident *is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy.*

N.C.G.S. § 20-279.21(b)(4) (emphasis added).

Appellants assert this statutory language shows the legislature contemplated UIM coverage for "vehicles" rather than "persons."

## HLASNICK v. FEDERATED MUT. INS. CO.

[353 N.C. 240 (2000)]

Although the statutory scheme for *liability* insurance is vehicle-oriented, *UIM insurance* is *person-oriented* under the Financial Responsibility Act. *Harrington v. Stevens*, 334 N.C. 586, 590, 434 S.E.2d 212, 214 (1993); *Smith v. Nationwide Mut. Ins. Co.*, 328 N.C. 139, 148, 400 S.E.2d 44, 50 (1991). In *Smith* we stated that the *liability* provisions of N.C.G.S. § 20-279.21(b)(2) require a policy to insure people " 'using any such motor vehicle or motor vehicles . . . against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of *such motor vehicle or motor vehicles.*' " *Smith*, 328 N.C. at 148, 400 S.E.2d at 50 (quoting N.C.G.S. § 20-279.21(b)(2) (1993) (amended 1997)) (alterations in original). In contrast, "the [uninsured motorist] (and by incorporation, the UIM) coverage is offered 'for the protection of *persons insured* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.' " *Id.* (quoting N.C.G.S. § 20-279.21(b)(3) (1993) (amended 1997)) (alteration in original).

The validity of multi-tier UIM coverage is an issue of first impression in North Carolina. Although there is a paucity of decisions generally addressing this question, our research has located appellate decisions affirming the principle of multi-tier coverage. *See, e.g., Preferred Risk Mut. Ins. Co. v. Federated Mut. Ins. Co.*, 611 N.W.2d 283 (Iowa 2000); *Allstate Ins. Co. v. United Farm Bur. Mut. Ins. Co.*, 618 N.E.2d 31 (Ind. Ct. App. 1993); *Auto-Owners Ins. Co. v. United Farm Bur. Mut. Ins. Co.*, 560 N.E.2d 549 (Ind. Ct. App. 1990); *Cullum v. Farmers Ins. Exch.*, 857 P.2d 922 (Utah 1993).

In *Preferred Risk Mut. Ins. Co. v. Federated Mut. Ins. Co.*, Thomas and Holly Peterson were injured in an automobile accident with an uninsured motorist. 611 N.W.2d at 283. The Petersons were operating an automobile insured by Thomas' corporate employer through Federated Mutual Insurance Company. *Id.* at 284. The policy provided uninsured motorist (UM) coverage of $100,000 to corporate directors, officers, partners or owners but no UM coverage to all other insureds. *Id.* The Iowa Supreme Court affirmed "the practice of providing different limits of uninsured motorist coverage for different categories of insureds." *Id.* at 285. The Court further held that, because the named insured did not decline coverage, UM coverage was required at the minimum level established by Iowa statute. *Id.* Consequently, the Court concluded the Petersons were entitled to UM coverage equal to the statutory minimum. *Id.* at 284.

Similarly, courts in other jurisdictions have upheld multi-tier *liability* coverage. For example, in *Allstate Ins. Co. v. United Farm*

*Bur. Mut. Ins. Co.*, Joseph Lubovich insured his car with United Farm Bureau Mutual Insurance Company. 618 N.E.2d at 32. Although the policy provided liability coverage to the insured, his employees, and members of his household, among others, of $100,000 per person and $300,000 per accident, the policy contained a clause that reduced the amount of liability coverage for permissive users to the minimum level mandated by Indiana's financial responsibility law, $25,000. *Id.* at 32-33. The Indiana Court of Appeals held, among other things, that the policy's multi-tier coverage did not violate public policy and was otherwise valid. *Id.* at 33-36.

In the present case, the Federated policy provided UIM coverage meeting the minimum statutory requirements. Glen Burnie, the purchaser of the fleet policy, paid additional premiums to provide higher limits of UIM coverage to certain persons insured in excess of the statutory floor. Because the provision of additional or supplemental UIM coverage in excess of the statutory floor is permissible under North Carolina law, we affirm the Court of Appeals' conclusion that Federated's two-tiered UIM coverage endorsement provision is valid and enforceable. As to the remaining issues briefed by the parties before this Court, we conclude discretionary review was improvidently allowed.

AFFIRMED IN PART; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.