IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-151

Filed 19 September 2023

Wake County, No. 22 CVD 4859

ONNIPAUPER LLC, Plaintiff,

v.

EUGENE DUNSTON, Defendant.

Appeal by Plaintiff from order entered 13 October 2022 by Judge David Baker in Wake County District Court. Heard in the Court of Appeals 9 August 2023.

*City of Oaks Law, by Hunter Blake Winstead & Jonathan W. Anderson, for Plaintiff-Appellant.*

*Legal Aid of North Carolina, Inc., by BreAnna VanHook, Christopher Stella, Pamela Thombs, Celia Pistolis, & Isaac W. Sturgill, for Defendant-Appellee.*

CARPENTER, Judge.

Onnipauper LLC ("Plaintiff") appeals from the trial court's order dismissing its complaint in summary ejectment and granting a money judgment to Eugene Dunston ("Defendant"). On appeal, Plaintiff asserts the trial court erred by concluding Plaintiff violated the North Carolina Debt Collection Act (the "NCDCA"). After careful review, we agree with Plaintiff. Therefore, we reverse the trial court's order.

**I.    Factual & Procedural Background**

Starting in August 2019, Plaintiff rented a Raleigh property (the "Property") to Defendant. The Property is a single-family home with a well that supplies water solely to the home. On 15 August 2019, the parties executed a rental contract (the "Lease"). Under the terms of the Lease, Plaintiff agreed to rent the Property to Defendant, and Defendant agreed to pay monthly rent of $1,175. Four days after executing the Lease, the parties signed an amendment, modifying the "[t]otal rent" to a monthly amount of $1,350. The amended Lease itemized the rent, detailing a "[b]ase rent" of $1,175, a "[w]ater utility" amount of $125, and a "[w]asher[–d]ryer" amount of $50. The water-utility amount refers to Defendant's use of the well.

Plaintiff and Defendant later excluded the $50 washer–dryer amount from Defendant's total rent because Defendant did not use the washer or dryer. Therefore, after the amendment, Defendant's total rent was $1,300. Throughout Defendant's tenancy, a third party subsidized part of Defendant's base rent, and Defendant paid the difference plus the "[w]ater utility" amount. On 31 January 2022, Plaintiff gave Defendant a written notice to vacate the Property by 11 March 2022.

Defendant refused to leave the Property, so on 1 April 2022, Plaintiff filed a complaint for summary ejectment against Defendant in Wake County Small Claims Court. The complaint listed the "rate of rent" as $1,350. On 18 April 2022, the small-claims magistrate ordered Defendant to vacate the Property. On 22 April 2022, Defendant appealed to Wake County District Court. On 2 June 2022,

Defendant answered Plaintiff's complaint, raised affirmative defenses, and asserted counterclaims for violations of the NCDCA.

After a bench trial conducted on 23 August 2022, the trial court found Plaintiff violated two provisions of the NCDCA. Specifically, the trial court found "Plaintiff violated N.C. Gen. Stat. § 75-55(2) twenty-nine (29) times by attempting to collect and collecting a fee for the provision of water that [it was] not legally entitled to collect." The trial court also found Plaintiff violated N.C. Gen. Stat. § 75-54(4) by stating in its complaint that Defendant's "rate of rent" was $1,350, rather than $1,175. In support of these violations, the trial court found:

> 56. Pursuant to North Carolina General Statute § 42-42(2) the landlord has a standing obligation to do whatever is necessary to put and keep the premises in a fit and habitable condition. Additionally, the landlord must comply with the provision of North Carolina General Statute § 42-42(4) by maintaining in good and safe working order, plumbing and other facilities provided by the landlord.
>
> 57. Access to running water is essential to the habitability of the leased premises. Thus, Landlord is not entitled to charge an additional fee to the tenant for upholding this basic statutory obligation to provide fit premises.
>
> . . . .
>
> 61. Plaintiff was not entitled to collect fees from Defendant for the provision of unmetered well water. These charges are not lawful, and tenant is entitled to a reimbursement of all payments for water and sewer.

Thus, the trial court dismissed Plaintiff's complaint with prejudice and awarded

$25,876 to Defendant.  Plaintiff timely appealed on 2 November 2022.

## II.    Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(2) (2021).

## III.    Issues

The issues on appeal are whether the trial court erred by concluding Plaintiff violated N.C. Gen. Stat. § 75-54(4) (2021) and N.C. Gen. Stat. § 75-55(2) (2021).

## IV.    Standard of Review

When we review decisions from a bench trial, "findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain a finding to the contrary." *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968).  But "[c]onclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal." *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004).  "'Under a de novo review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

"The label of fact put upon a conclusion of law will not defeat appellate review." *City of Charlotte v. Heath*, 226 N.C. 750, 755, 40 S.E.2d 600, 604 (1946).  Thus, findings of fact that are actually conclusions of law will be reviewed as conclusions of law.  *Harris v. Harris*, 51 N.C. App. 103, 107, 275 S.E.2d 273, 276

(1981). And determinations reached by "application of legal principles" are conclusion of law. *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997).

Here, the trial court made findings of fact asserting Plaintiff violated sections 75-54 and 75-55. These assertions, however, required an application of legal principles; specifically, these assertions required application of statutory elements. *See* N.C. Gen. Stat. §§ 75-54(4), 55(2). Because we are not bound by the trial court's labels, we will review these "findings of facts" as conclusions of law, as they were reached by an application of legal principles. *See Heath*, 226 N.C. at 755, 40 S.E.2d at 604; *In re Helms*, 127 N.C. App. at 510, 491 S.E.2d at 675. Accordingly, we will review these conclusions of law de novo. *See Carolina Power & Light*, 358 N.C. at 517, 597 S.E.2d at 721.

## V.    Analysis

On appeal, Plaintiff argues the trial court erred in holding that it violated N.C. Gen. Stat. §§ 75-54, -55. After careful review, we agree with Plaintiff on both arguments. Because it is more involved, we will address section 75-55 first.

### A. N.C. Gen. Stat. § 75-55(2)

Chapter 75 of our General Statutes contains the NCDCA, which prohibits certain debt-collection activity. *See* N.C. Gen. Stat. §§ 75-51 to -55 (2021). Section 75-55 prohibits debt collectors from collecting debts "by unconscionable means," which includes "[c]ollecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or

attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge." *Id.* § 75-55(2).

But before diving into the specific requirements of section 75-55, we must first analyze the six threshold elements applicable to all NCDCA claims. *Reid v. Ayers*, 138 N.C. App. 261, 263–66, 531 S.E.2d 231, 233–35 (2000). All NCDCA claims require: (1) a consumer; (2) that owes a debt; (3) to a debt collector. *Id.* at 263, 531 S.E.2d at 233. Further, all NCDCA claims require: (4) the debt collector to commit an unfair act; (5) that affects commerce; and (6) that proximately injures the consumer. *Id.* at 266, 531 S.E.2d at 235. Because a section 75-55 claim is conjunctive, including the threshold elements, we will walk through each element until we reach a dead end or valid claim.

### 1. Consumer

A "consumer" is "any natural person who has incurred a debt or alleged debt for personal, family, household or agricultural purposes." N.C. Gen. Stat. § 75-50(1) (2021). Here, Defendant is a natural person who incurred this alleged debt for well-water use at his home. Well-water use at one's home is a personal, household purpose. Defendant is therefore a consumer under the NCDCA. *See id.*

### 2. Debt

A "debt" is "any obligation owed or due or alleged to be owed or due from a consumer." *Id.* § 75-50(2). In *Friday v. United Dominion Realty Trust*, this Court said that "past due" rent is debt under section 75-50. 155 N.C. App. 671, 678, 575

S.E.2d 532, 537 (2003). Plaintiff points to *Friday* and federal-court interpretations of the NCDCA for the proposition that "debt" requires the consumer to be in default, meaning the payment must be past due. We think this is a misreading of "debt."

When examining statutes, words undefined by the General Assembly "must be given their common and ordinary meaning." *In re Clayton-Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202–03 (1974). "Debt" is statutorily defined, but "owed" and "due" are not. *See* N.C. Gen. Stat. § 75-50. Therefore, we look to the common meaning of "owed" and "due." *See In re Clayton-Marcus Co.*, 286 N.C. at 219, 210 S.E.2d at 202–03. "Owe" is defined as "to be under obligation to pay or repay in return for something received." *Owe*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2020). "Due" is defined as "owed or owing as a debt." *Due*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, *supra*. And contrary to Plaintiff's position, the *Reid* Court implied that payment timing is irrelevant to defining debt; the *Reid* Court focused on whether there was an obligation to pay, not when the payment was due. *See Reid*, 138 N.C. App. at 264, 531 S.E.2d at 234.

Here, Defendant was obliged to pay Plaintiff $125 each month to use a well. Defendant's obligation to pay accrued at the beginning of each month that Defendant occupied the Property. Regardless of the timing of his payments, Defendant was indebted to Plaintiff because Defendant was obliged to pay "in return for something received," well access. *See* N.C. Gen. Stat. § 75-50(2); MERRIAM-WEBSTER'S, *supra*. Therefore, given the "common and ordinary meaning"

of "debt," Defendant owed Plaintiff a debt under the NCDCA. *See In re Clayton-Marcus Co.*, 286 N.C. at 219, 210 S.E.2d at 202–03.

### 3. Debt Collector

A "debt collector" is "any person engaging, directly or indirectly, in debt collection from a consumer." N.C. Gen. Stat. § 75-50(3). "Debt collector" is defined broadly: "there is no regularity or primary purpose limitation." *Reid*, 138 N.C. App. at 265, 531 S.E.2d at 234. Here, the parties do not dispute that Plaintiff collected money from Defendant, a consumer. Because we have established that the money collected was a debt, Plaintiff is therefore a debt collector under the NCDCA. *See* N.C. Gen. Stat. § 75-50(3); *Reid*, 138 N.C. App. at 265, 531 S.E.2d at 234.

### 4. Unfair Act

We must now determine whether Plaintiff committed an "unfair act." *Reid*, 138 N.C. App. at 266, 531 S.E.2d at 235. "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Whether an act is unfair depends on the facts of the case. *Id*. at 548, 276 S.E.2d at 403. Concerning contractual obligations, "our state's legal landscape recognizes that, unless contrary to public policy or prohibited by statute, freedom of contract is a fundamental constitutional right." *Hlasnick v. Federated Mut. Ins. Co.*, 353 N.C. 240, 243, 539 S.E.2d 274, 276 (2000).

"In the absence of statutory proscription or public policy violation, it is beyond question that parties are free to contract as they deem appropriate . . . ." *Id.* at 244, 539 S.E.2d at 277. Because parties are free to contract as they please, *see id.* at 244, 539 S.E.2d at 277, and because we are not moral arbiters—we do not deem a practice "immoral, unethical, oppressive, unscrupulous, or substantially injurious" unless the contract is prohibited by the General Assembly or other controlling authority, *see Marshall*, 302 N.C. at 548, 276 S.E.2d at 403. Therefore, we must determine whether the well-use provision is "contrary to public policy or prohibited by statute" to determine whether Plaintiff committed an unfair act under the NCDCA. *See Hlasnick*, 353 N.C. at 243, 539 S.E.2d at 276; *Reid*, 138 N.C. App. at 266, 531 S.E.2d at 235.

Here, in addition to the "base rent," the parties mutually agreed that Defendant would pay Plaintiff $125 each month to use the well. And for twenty-nine months, Defendant paid Plaintiff to use the well. Yet the trial court found the well-use provision "unlawful" under N.C. Gen. Stat. § 42-42 (2021). If the provision was indeed unlawful under section 42-42, it would be against public policy and therefore unfair under the NCDCA. *See Marshall*, 302 N.C. at 548, 276 S.E.2d at 403. Accordingly, we must analyze the legality of the well-use provision to determine if it was "unfair" under the NCDCA.

### i.    N.C. Gen. Stat. § 42-42

Under section 42-42, landlords must "provide fit premises" for tenants. *See*

N.C. Gen. Stat. § 42-42.  Specifically, landlords must "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition," *id.* § 42-42(2), and landlords must "[m]aintain in good and safe working order and promptly repair all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances supplied or required to be supplied by the landlord," *id.* § 42-42(4).

Here, the trial court found the well-use provision unlawful under subsections 42-42(2) and (4) because Plaintiff was "not entitled to charge an additional fee to the tenant for upholding this basic statutory obligation to provide fit premises."  In other words, the trial court found Plaintiff violated subsections 42-42(2) and (4) because Plaintiff was not entitled to separately charge Defendant for providing a fit premises.  Nothing in our statutes or caselaw supports this proposition.  Plaintiff is required to provide a fit premises; it is not required to do so for free.  *See id.* § 42-42(2), (4).

As mentioned above, Defendant and Plaintiff contracted for Defendant to pay $125 per month for well access.  Defendant paid, and Plaintiff provided.  No evidence suggests the Property was unfit for Defendant, and no evidence suggests that a separate well-use fee is prohibited by section 42-42.  Therefore, Plaintiff did not violate section 42-42 by charging Defendant a well-use fee.  *See id.* § 42-42(2), (4).

ii.    **N.C. Gen. Stat. § 42-42.1**

Defendant also asserts Plaintiff's well-use provision is unlawful under N.C. Gen. Stat. § 42-42.1 (2021) because Plaintiff is required to charge for water based on a metered measurement. So according to Defendant, the well-use provision is prohibited and therefore unfair under the NCDCA. We disagree.

Under section 42-42.1, "[f]or the purpose of encouraging water, electricity, and natural gas conservation, pursuant to a written rental agreement, a lessor *may* charge for the cost of providing water or sewer service to lessees pursuant to [N.C. Gen. Stat.] 62-110(g) . . . ." *id.* § 42-42.1(a) (emphasis added). Generally, "may" does not mandate; "may" merely permits. *Campbell v. First Baptist Church*, 298 N.C. 476, 483, 259 S.E.2d 558, 563 (1979). Nonetheless, we will analyze section 62-110 to confirm the general understanding of "may" is applicable here.

Subsection 110(g)(1) of Chapter 62, titled "Public Utilities," provides that "all charges for water or sewer service shall be based on the user's metered consumption of water, which shall be determined by metered measurement of all water consumed." N.C. Gen. Stat. § 62-110(g)(1) (2021). In a preceding section, however, Chapter 62 provides:

> authority shall be vested in the North Carolina Utilities Commission to regulate *public utilities* . . . . Nothing in this Chapter shall be construed to imply any extension of Utilities Commission regulatory jurisdiction over any industry or enterprise that is not subject to the regulatory jurisdiction of said Commission.

*Id.* § 62-2(b) (2021) (emphasis added).

The General Assembly was clear: Chapter 62 governs only public utilities. *Id.* And this Court has confirmed the clarity: "Chapter 62 of the North Carolina General Statutes defines and prescribes the way public utilities are regulated within the state." *State ex rel. Utils. Comm'n v. Cube Yadkin Generation LLC*, 279 N.C. App. 217, 220, 865 S.E.2d 323, 325 (2021); *see also, e.g., State ex rel. Utils. Comm'n v. N.C. Waste Awareness & Reduction Network*, 255 N.C. App. 613, 616, 805 S.E.2d 712, 714 (2017) ("The Public Utilities Act, found in Chapter 62 of our General Statutes, gives the Commission the power to supervise and control the 'public utilities' in our State."); *State ex rel. Utils. Comm'n v. Carolina Util. Customers Ass'n*, 163 N.C. App. 46, 48, 592 S.E.2d 221, 223 (2004) ("Chapter 62 of our statutes governs public utilities . . . .").

Concerning water use, a "public utility" is a person "owning or operating in this State equipment or facilities for . . . [d]iverting, developing, pumping, impounding, distributing or furnishing water to or for the public for compensation." N.C. Gen. Stat. § 62-3(23)(a)(2) (2021). A "public utility" is not, however, a person who "furnishes such service or commodity only to himself, his employees or tenants when such service or commodity is not resold to or used by others." *Id.* § 62-3(23)(d)(4). In other words, subsection 62-3(23)(d)(4) exempts those who solely provide water in a landlord–tenant relationship from public-utility regulation. *Cube*, 279 N.C. App. at 220, 865 S.E.2d at 326 (citing N.C. Gen. Stat. § 62-3(23)(d)(4)) (stating that "[subs]ection 62-3(23)(d) exempts from the definition of a

'public utility' an entity acting in a landlord/tenant relationship").

Here, Plaintiff is a landlord, Defendant was Plaintiff's tenant, and the Property is a single-family dwelling with a well as its water source. Plaintiff rented Defendant access to the well, and that "service or commodity [was] not resold to or used by others." *See* N.C. Gen. Stat. § 62-3(23)(d)(4). Thus, Plaintiff falls squarely within the landlord–tenant exemption and is not regulated as a public utility under Chapter 62. *See id.*; *Cube*, 279 N.C. App. at 220, 865 S.E.2d at 326. Therefore, Plaintiff is not required to charge for water consumption based on a metered measurement. *See* N.C. Gen. Stat. § 62-3(23)(d)(4); *Cube*, 279 N.C. App. at 220, 865 S.E.2d at 326.

Returning to the use of "may" in section 42-42.1: The landlord–tenant exemption supports the generally understood meaning of "may." It is permissive. *See Campbell*, 298 N.C. at 483, 259 S.E.2d at 563; N.C. Gen. Stat. § 42-42.1(a). Section 42-42.1 states lessors may comply with section 62-110, and Chapter 62 has a landlord–tenant exemption. *See* N.C. Gen. Stat. §§ 42-42.1(a), 62-3(23)(d)(4). With the exemption, Chapter 62 does not govern landlords who provide water to "tenants when such service or commodity is not resold to or used by others." *See id.* § 62-3(23)(d)(4). In other words, lessors who qualify for the landlord–tenant exemption are not regulated as public utilities under Chapter 62. *See id.*

So when section 42-42.1 states "a lessor may" choose to comply with section 62-110, the statute merely permits compliance with section 62-110. *See Campbell*,

298 N.C. at 483, 259 S.E.2d at 563; N.C. Gen. Stat. § 42-42.1(a). It does not require compliance. Otherwise, "may" would mandate metered measurement as a public utility and would clash with the landlord–tenant exemption. *See* N.C. Gen. Stat. § 62-3(23)(d)(4). Because "may" is generally understood to permit, and that general understanding supports the landlord–tenant exemption, the permissive meaning applies to section 42-42.1. *See Campbell*, 298 N.C. at 483, 259 S.E.2d at 563; N.C. Gen. Stat. § 42-42.1(a). Thus, section 42-42.1 does not require lessors to follow section 62-110, and Plaintiff's well-use provision is lawful. *See* N.C. Gen. Stat. § 42-42.1(a). But as discussed above: Even if section 42-42.1 required lessors to comply with section 62-110, Plaintiff would be exempt from compliance because of the landlord–tenant exemption, and the well-use provision would still be lawful. *See id*. § 62-3(23)(d)(4).

We conclude Plaintiff's well-water provision does not violate sections 42-42 or 42-42.1. Therefore, the well-water provision does not violate public policy and is not unfair under the NCDCA. *See Marshall*, 302 N.C. at 548, 276 S.E.2d at 403. Hence, Defendant failed to satisfy a threshold NCDCA element, and Defendant therefore failed to establish a section 75-55 claim. *See Reid*, 138 N.C. App. at 266, 531 S.E.2d at 235; N.C. Gen. Stat. § 75-55(2). Because the elements of such a claim are conjunctive, we need not address its remaining elements.

## B. N.C. Gen. Stat. § 75-54(4)

Section 75-54 prohibits debt collectors from "[f]alsely representing the

character, extent, or amount of a debt against a consumer or of its status in any legal proceeding." N.C. Gen. Stat. § 75-54(4). "To prevail on a claim for violation of [section 75-54], one need not show deliberate acts of deceit or bad faith, but must nevertheless demonstrate that the act complained of 'possessed the tendency or capacity to mislead, or created the likelihood of deception.'" *Forsyth Mem'l Hosp., Inc. v. Contreras*, 107 N.C. App. 611, 614, 421 S.E.2d 167, 169–70 (1992) (quoting *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 453, 279 S.E.2d 1, 7 (1981)). But like any other NCDCA claim, section 75-54 requires the threshold NCDCA elements. *See Reid*, 138 N.C. App. at 263–66, 531 S.E.2d at 233–35. For efficiency's sake, we will start with the proximate-injury element. *See id.* at 266, 531 S.E.2d at 235 (listing the final NCDCA element as an act "proximately causing injury").

Here, the Lease itemized the rent, detailing a "[b]ase rent" of $1,175, a "[w]ater utility" amount of $125, and a "[w]asher[–d]ryer" amount of $50. Defendant suggests Plaintiff violated section 75-54 because Plaintiff's complaint listed Defendant's "rate of rent" as $1,350, which Defendant contends is inaccurate because he did not owe a washer–dryer fee, and because the well-use fee was unlawful.

We have already established the well-use provision was lawful. But as Defendant points out, Plaintiff waived the washer–dryer fee, lowering the rent to $1,300. Thus, the actual rent was $1,300, and Plaintiff's complaint listed the rent as $1,350. Defendant, however, was not proximately injured by Plaintiff's "false

representation." Defendant never overpaid because of Plaintiff's error. Indeed, Defendant failed to pay any rent after Plaintiff filed its complaint. Nor did Plaintiff's error deceive Defendant. Defendant only alleged Plaintiff deceived him due to the unlawfulness of the well-use provision, but as detailed above, we conclude the provision was lawful. Further, Plaintiff agreed to waive the washer–dryer fee, and Defendant never argued that he paid, or was misled, about the fee.

Therefore, Plaintiff did not violate section 75-54 because Defendant was not proximately injured by Plaintiff's error. *See Reid,* 138 N.C. App. at 266, 531 S.E.2d at 235. Accordingly, we conclude the trial court erred when it found Plaintiff violated section 75-54. *See id.* at 266, 531 S.E.2d at 235; N.C. Gen. Stat. § 75-54(4).

## VI.   Conclusion

In sum, we hold the trial court erred in concluding Plaintiff violated sections 75-54 and 75-55. Thus, we reverse the trial court's order.

REVERSED.

Judge TYSON and Judge FLOOD concur.