## IN RE APPEAL OF DICKEY

[110 N.C. App. 823 (1993)]

IN THE MATTER OF: THE APPEAL OF GENE A. DICKEY AND DEBORAH A. DICKEY FROM THE FORSYTH COUNTY BOARD OF EQUALIZATION AND REVIEW FOR 1990

No. 9210PTC668

(Filed 6 July 1993)

1. **Taxation § 25.3 (NCI3d)— house listed by taxpayers— administrative error by assessor's office—house not "discovered property"**

The N.C. Property Tax Commission properly determined that the house belonging to appellee taxpayers could not be considered "discovered property" as that term was defined in N.C.G.S. § 105-312(a)(1) (1985) (repealed effective 10 April 1991) since the taxpayers listed their property, including their house, on a 1989 property tax listing form signed by taxpayer husband on 17 January 1989, and the County did not argue that the taxpayers listed the house but substantially understated its value; therefore, N.C.G.S. § 105-312, authorizing retroactive taxation of discovered property, provided no authority for the county assessor's office to add a sum to the previously assessed value and assess the taxpayers an additional $2100 in taxes.

**Am Jur 2d, State and Local Taxation § 719.**

2. **Taxation § 25.5 (NCI3d)— failure of assessor to appraise house—subsequent appraisal and levy of tax—no retroactive increase in appraisal of property value**

N.C.G.S. § 105-287, prohibiting retroactive increases in appraised property values, did not operate to preclude the county assessor's office from levying the challenged 1989 tax on taxpayers' house in 1990, since the record revealed that the portion of the taxpayers' 1989 property tax listing form which contained the listing of the house was inadvertently removed and destroyed; the Assessor was unaware for tax purposes of the existence of any improvements to the lot which had previously been appraised; the Assessor therefore could not have ascertained in 1989 the true value of a house which it did not know existed; the Assessor, due to an administrative error, simply failed to appraise the house or to bill the taxpayers in 1989 for taxes owed thereon; and the Tax Commis-

sion therefore erred in finding that the Assessor appraised in 1989 the value of the taxpayers' house at $0.00.

**Am Jur 2d, State and Local Taxation § 712.**

**3. Taxation § 25.4 (NCI3d) — tax bill — failure to include assessment for improvements — immaterial irregularity**

Failure by the Assessor, due to an administrative error, to include on the taxpayers' 1989 tax bill an assessment for the improvements to their lot was an immaterial irregularity and did not, contrary to taxpayers' contention, invalidate the tax owed by them on their house.

**Am Jur 2d, State and Local Taxation § 712.**

Appeal by Forsyth County from Final Decision of the North Carolina Property Tax Commission entered 20 February 1992. Heard in the Court of Appeals 25 May 1993.

*Office of Forsyth County Attorney, by Forsyth County Attorney P. Eugene Price, Jr., and Assistant Forsyth County Attorneys Davida W. Martin and Paul A. Sinal, for appellant Forsyth County.*

*Gene A. Dickey and Deborah A. Dickey, pro se.*

GREENE, Judge.

The Forsyth County Board of Equalization and Review For 1990 (the County) appeals from a Final Decision of the North Carolina Property Tax Commission sitting as the State Board of Equalization and Review entered 20 February 1992.

The facts pertinent to this appeal are as follows: On 28 October 1988, Gene A. Dickey and his wife, Deborah A. Dickey (the Dickeys) purchased a lot and a newly constructed house in Winston-Salem, North Carolina, for $272,500.00. The Dickeys submitted their "1989 Property Tax Listing" on 17 January 1989. The Dickeys' 1989 tax bill from the Forsyth County Assessor's Office (the Assessor) assessed the Dickeys for real property valued at $37,500.00. The tax bill was paid by the Dickeys' escrow agent, and the balance of the escrow account was refunded to the Dickeys.

On 12 June 1990, the Assessor notified the Dickeys that their property "ha[d] been taxed improperly" for the year 1989. The

Assessor, pursuant to N.C.G.S. § 105-312 (discovered property), added to the previously assigned value the sum of $185,500.00, and assessed the Dickeys an additional $2,094.30 in taxes. The Dickeys, asserting that they had properly filed their 1989 taxes, challenged the assessment as being untimely and requested and were granted a hearing with the Assessor on 18 July 1990. The Dickeys did not, and do not, dispute that their house on 1 January 1989 had a value of $185,500.00. After the hearing, the Assessor informed the Dickeys that there would be "no change in the 1989 assessment for the improvements" on the Dickeys' lot.

The Dickeys appealed to the County, appellant herein, which dismissed their appeal. On 4 January 1991, the Dickeys appealed to the North Carolina Property Tax Commission (the Commission). In its final decision, the Commission found that the Dickeys properly listed the house on their property tax listing dated 17 January 1989 "on a portion of the listing form which was designed to be torn off if it was not completed." According to the Commission, "[a]fter receipt by the County, this portion of the form was removed and destroyed even though it had been completed by the [Dickeys]." The Commission further found:

> 10. While [the Dickeys'] Exhibit 3, the Forsyth County 1989 tax bill for the [Dickeys], indicates a "real value" of $37,500 and a motor vehicle value of $6,120 for a total taxable value of $43,620, the real estate excise tax stamps on the deed by which the [Dickeys] acquired the subject property (County Exhibit 1) indicate that the purchase price paid by the [Dickeys] for the house and lot was approximately $272,500. Despite the large difference between the purchase price of $272,500 and the "real value" of $37,500 on the 1989 tax bill, Mr. Dickey testified that he was unaware of the County's error until 1990.

The Commission concluded that, because the Dickeys submitted a timely and accurate 1989 property tax listing, the improvements on the Dickeys' lot cannot be considered "discovered property" under the provisions of N.C.G.S. § 105-312. The Commission also concluded that the Assessor appraised the house at a value of $0.00 for the tax year 1989, and that, under the provisions of N.C.G.S. § 105-287, the Assessor was authorized to reappraise the house in 1990, but that such reappraisal is effective as of 1 January of the year in which it is made and is not retroactive. The Commission ordered the Assessor to revise its tax records to reflect that

the appraised value of the Dickeys' house for the year 1989 is $0.00. The County appeals.

---

The issues are (I) whether the Assessor properly assessed in 1990 the Dickeys' house as "discovered property" pursuant to N.C.G.S. § 105-312; (II) whether the Assessor "appraised" the house in 1989 at a value of $0.00 and therefore is precluded pursuant to N.C.G.S. § 105-287 from retroactively increasing the appraised value of the house; and (III) whether the Assessor's failure to assess the Dickeys in 1989 for 1989 taxes owed on the house constitutes pursuant to N.C.G.S. § 105-394 an "immaterial irregularity" which does not invalidate the tax levied in 1990.

This Court may reverse or modify a decision of the Property Tax Commission

> if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
>
> . . . .
>
> (4) Affected by . . . errors of law; or
>
> (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted . . . .

N.C.G.S. § 105-345.2 (1992). In applying the "whole record" test set forth in Section 105-345.2(5), the reviewing court is not permitted " 'to substitute its judgment for [that of the Commission] as between two reasonably conflicting views; however, it does require the court to take into account both the evidence justifying the [Commission's] decision and the contradictory evidence from which a different result could be reached.' " *Watson v. North Carolina Real Estate Comm'n*, 87 N.C. App. 637, 639, 362 S.E.2d 294, 296 (1987) (citation omitted).

I

**[1]** The County argues that the Commission made an error of law in failing to determine that the Dickeys' house is "discovered property" and was therefore properly taxed in 1990 for taxes owed in 1989. We disagree.

All property, real and personal, within the jurisdiction of the State shall be subject to taxation unless it is excluded or exempted.

N.C.G.S. § 105-274 (1992). All property subject to ad valorem taxation shall be listed annually,[1] as a general rule during the month of January. N.C.G.S. §§ 105-285(a), 105-307 (1992). The law in effect at the time the Dickeys filed their 1989 property listing and when the Assessor notified the Dickeys in June, 1990, of the "discovered improvements" on the Dickeys' lot provided:

(1) The phrase "discovered property" shall include property that was not listed by the taxpayer or any other person during a regular listing period and also property that was listed but with regard to the value, quantity, or other measurement of which the taxpayer made a substantial understatement in listing.

N.C.G.S. § 105-312(a)(1) (1985) (repealed effective 10 April 1991).[2] Discovered property "shall be taxed for the year in which discovered and for any of the preceding five years during which it escaped taxation." N.C.G.S. § 105-312(g) (1992).

The evidence in the record supports the Commission's finding that the Dickeys listed their property, including the house, on a 1989 property tax listing form signed by Mr. Dickey on 17 January 1989, and the County does not argue that the Dickeys listed the house but substantially understated its value. Therefore, we conclude that the Commission properly determined that the house cannot be considered "discovered property" as that term is defined in former Section 105-312(a)(1). Thus, Section 105-312, authorizing retroactive taxation of discovered property, provides no authority for the Assessor's challenged actions.

---

1. The term "list," when used as a verb, is not defined in North Carolina's tax code. "List" or "listing," when used as a noun, means "the document on which the property of a taxpayer is listed for ad valorem taxation and on which the appraised and assessed values of the property are recorded." N.C.G.S. § 105-273(9) (1992). Our use of the verb "list" in this opinion means the process by which the taxpayer files with the tax assessor a tax list or abstract showing the required property information. See generally N.C.G.S. § 105-309 (1992).

2. The County argues that the Assessor, not the taxpayer, is charged with the duty to "list" property for taxation, and that therefore, even though the Dickeys may have submitted a 1989 property tax listing, the house may nevertheless be considered discovered property under Section 105-312 because it was not listed by the Assessor. Based on our interpretation of the verb "list," see n.1, supra, and on the definition of "discovered property" in Section 105-312(a)(1), we reject this argument.

II

[2]   The County argues that the Commission's finding that the Assessor appraised in 1989 the value of the Dickeys' house at $0.00 is not supported by competent, material and substantial evidence in view of the entire record as submitted. According to the County, the Assessor never appraised the Dickeys' house for tax purposes in 1989 and that therefore, contrary to the Commission's finding and the Dickeys' contention, N.C.G.S. § 105-287 has no application. We agree.

The tax assessor, in certain situations and at certain times not relevant here, may increase or decrease the appraised value of real property, but such increase or decrease "is effective as of January 1 of the year in which it is made and is not retroactive." N.C.G.S. § 105-287(c) (1992). The term "appraisal" means both the true value of property and the process by which the true value of property is ascertained. N.C.G.S. § 105-273(2) (1992). The Commission found that the Assessor "appraised" the Dickeys' house in 1989 at a value of $0.00, and that the Assessor, pursuant to Section 105-287, properly "increased" this "appraised value" in 1990 to the sum of $185,500.00. The Commission determined, however, that because any increase in appraised value is not retroactive, the increase was effective only as of 1 January 1990, and could not be applied to taxes owed by the Dickeys in 1989.

Based on the definition of the term "appraisal" in Section 105-273, the Commission's finding that the Assessor appraised the house at a value of $0.00 in 1989 simply is not supported by the evidence. There is no evidence that the Assessor prior to 1990 attempted to ascertain the true value of the Dickeys' house, and it is undisputed that the true value of the house in 1989 was not *zero* dollars. Rather, the record reveals that, because the portion of the Dickeys' 1989 property tax listing form which contained the listing of the house was inadvertently removed and destroyed, the Assessor was unaware for tax purposes of the existence of any improvements to the lot. Therefore, it defies logic to find that the Assessor could have ascertained in 1989 the true value of a house which it did not know existed. Furthermore, the 1989 tax bill received by the Dickeys lists the "real value" of the Dickeys' property as $37,500.00, the same value assigned to the property by the Assessor in 1988, prior to the improvement of the lot. A fair reading of the record reveals that the Assessor, due to

an administrative error, simply failed to appraise the house or to bill the Dickeys in 1989 for taxes owed thereon. Therefore, contrary to the determination of the Commission, Section 105-287, prohibiting retroactive increases in *appraised* property values, does not operate to preclude the Assessor from levying the challenged tax in 1990.

## III

[3] The County finally argues that the Assessor's failure to levy any tax on the house in 1989 is an "immaterial irregularity" which does not invalidate the tax owed on the house in 1989 and imposed by the Assessor in 1990.

North Carolina Gen. Stat. § 105-394 provides that "[i]mmaterial irregularities in the listing, appraisal, or assessment of property for taxation or in the levy or collection of the property tax . . . shall not invalidate the tax imposed upon any property." N.C.G.S. § 105-394 (1992). Examples of immaterial irregularities include the "failure to list, appraise, or assess any property for taxation or to levy any tax within the time prescribed by law." *Id.* Furthermore, this Court has held that "a clerical error by a tax supervisor's office is an immaterial irregularity under G.S. 105-394 so as not to invalidate the tax levied on the property." *In re Notice of Attachment*, 59 N.C. App. 332, 333-34, 296 S.E.2d 499, 500 (1982), *disc. rev. denied*, 307 N.C. 576, 299 S.E.2d 645 (1983).

Significantly, the Dickeys do not contend that their house is statutorily excluded or exempted from taxation, or that the $185,500.00 value assigned to the house by the Assessor is erroneous. Rather, they argue simply that, because an employee of the Assessor inadvertently destroyed the portion of the Dickeys' 1989 tax listing form containing the listing of the house—and because the Assessor did not become aware of the error until 1990—the Assessor is legally precluded from collecting the tax. Based on the clear and unambiguous language of Section 105-394, we conclude that the failure by the Assessor due to an administrative error to include on the Dickeys' 1989 tax bill an assessment for the improvements to the lot is an immaterial irregularity and does not, contrary to the Dickeys' contention, invalidate the tax owed on the house. *See State ex rel. Utilities Comm'n v. Edmisten*, 291 N.C. 451, 465, 232 S.E.2d 184, 192 (1977) (where language of a statute is clear and unambiguous, courts must give it its plain meaning). Because we have discovered no authority setting forth

a time limit within which the Assessor may correct an immaterial irregularity, *see In re Notice*, 59 N.C. App. at 335, 296 S.E.2d at 501 (if time limit is to be put on the assertion of immaterial irregularities under Section 105-394, that is a task for the Legislature), the Commission's decision relieving the Dickeys from their 1989 tax obligation must be

Reversed.

Judges JOHNSON and WYNN concur.