IN THE MATTER: THE APPEAL OF: TYLETA W. MORGAN FROM THE DECISION OF THE HENDERSON COUNTY BOARD OF EQUALIZATION AND REVIEW CONCERNING THE TAXATION OF CERTAIN REAL PROPERTY FOR TAX YEARS 1995 THROUGH 2003

No. COA06-1423

(Filed 6 November 2007)

**1. Taxation— ad valorem taxes—failure to assess—not an immaterial irregularity**

A county's failure to include an assessment for petitioner's residence in her tax bills from 1995 through 2003 was not an immaterial irregularity. There was substantial evidence tending to show that the County had multiple opportunities to assess the property, but failed to do so.

**2. Taxation— ad valorem taxes—failure to assess—interest**

Nothing in N.C.G.S. § 105-394 allows a county to attempt to collect interest and penalties in addition to back taxes allegedly owed when the county grossly and repeatedly failed to assess the listed property.

Judge GEER dissenting.

Appeal by Henderson County from final decision entered 17 July 2006 by Chairman Terry L. Wheeler for the North Carolina Property Tax Commission. Heard in the Court of Appeals 23 May 2007.

*DeVore, Acton & Stafford, PA, by Fred W. DeVore, III, for taxpayer-appellee Tyleta W. Morgan.*

*Parker Poe Adams & Bernstein LLP, by Charles C. Meeker and Benn A. Brewington, III, for appellant Henderson County.*

*Paul A. Meyer, for amicus curiae North Carolina Association of County Commissioners.*

TYSON, Judge.

Henderson County ("the County") appeals from final decision entered prohibiting it from attempting to collect unpaid back taxes and interest on real property owned by Tyleta W. Morgan ("Mrs. Morgan"). We affirm.

### I.  Background

Mrs. Morgan has owned approximately eighty-five acres of rural land in the County since 1972. In 1991, the property was placed in the

Forestry Management Program as "forestry" land and as a result was assessed at a relatively low present use tax value.

Mrs. Morgan and her husband, now deceased, began building a house on this property in 1986 that was finished in approximately 1993. Mr. Morgan obtained all required permits from the County to build the home, and the County inspected the construction in 1986.

In 1993, when the residence was eighty percent complete, Mr. Morgan listed the house on his county tax listing form. The County performed countywide reappraisals effective 1 January 1999 and 1 January 2003. An appraiser with the County Tax Assessor's Office visited the Morgans' property during those reappraisals. The listed residence remained unassessed.

In 2004, the County Tax Assessor's Office finally assessed taxes on the Morgans' residence and asserted that Mrs. Morgan owed back taxes and interest in the amount of $8,533.61 for tax years 1995 through 2003. Mrs. Morgan paid the sum and appealed to the Henderson County Board of Equalization and Review. The Board upheld the decision of the County Tax Assessor's Office and Mrs. Morgan appealed to the North Carolina Property Tax Commission ("the Commission").

The Commission found that Mrs. Morgan did not question the tax valuation of the property, but the County should have "ascertained values for the subject residence prior to the notice . . . to recover back[] taxes associated with the subject residence." Based upon its findings of fact, the Commission concluded "the failure of the Tax Assessor to include upon Taxpayer's 1995 through 2003 tax bills valuation assessments for the subject residence was not an immaterial irregularity" and barred the County from attempting to collect the back taxes. The County appeals.

## II. Issue

The County argues the Commission erred by concluding that it improperly issued assessment notices for the years 1995 through 2003 because the failure to assess the Morgans' residence was an immaterial irregularity pursuant to N.C. Gen. Stat. § 105-394.

## III. Standard of Review

This Court reviews the Commission's decision under the whole record test. The whole record test is not a tool of judicial intrusion and this Court only considers whether the Commission's

decision has a rational basis in the evidence. We may not substitute our judgment for that of the Commission even when reasonably conflicting views of the evidence exist.

*In re Weaver Inv. Co.*, 165 N.C. App. 198, 201, 598 S.E.2d 591, 593 (internal citations and quotations omitted), *disc. rev. denied*, 359 N.C. 188, 606 S.E.2d 695 (2004).

## IV. Immaterial Irregularities

[1] The County argues the failure by the County Tax Assessor's Office to include valuation assessments for Mrs. Morgan's residence on her 1995 through 2003 tax bills was an "immaterial irregularity" pursuant to N.C. Gen. Stat. § 105-394, and it is not barred from collecting nearly a decade's worth of back taxes. We disagree.

· N.C. Gen. Stat. § 105-394 (2005) states, in relevant part:

Immaterial irregularities in the listing, appraisal, or assessment of property for taxation or in the levy or collection of the property tax or in any other proceeding or requirement of this Subchapter shall not invalidate the tax imposed upon any property or any process of listing, appraisal, assessment, levy, collection, or any other proceeding under this Subchapter.

The following are examples of immaterial irregularities:

. . . .

(3) The failure to list, appraise, or assess any property for taxation or to levy any tax within the time prescribed by law.

The County and dissenting opinion cite *In re Appeal of Dickey*, 110 N.C. App. 823, 431 S.E.2d 203 (1993), to support the position that the County's failure to assess Mrs. Morgan's house for eleven years falls within the definition of "immaterial irregularities." We disagree.

In *In re Appeal of Dickey*, the tax assessor accidentally removed a portion of the Dickeys' property from the 1989 tax listing form. 110 N.C. App. at 825, 431 S.E.2d at 204. This Court reversed the Commission's decision to relieve the Dickeys from their 1989 tax obligation. This Court stated, "a *clerical error* by a tax supervisor's office is an immaterial irregularity under G.S. 105-394 so as not to invalidate the tax levied on the property." *Id.* at 829, 431 S.E.2d at 207 (citation omitted) (emphasis supplied). We held:

Based on the clear and unambiguous language of Section 105-394, we conclude that the failure by the Assessor due to an *administrative error* to include on the Dickeys' 1989 tax bill an assessment for the improvements to the lot is an immaterial irregularity and does not, contrary to the Dickeys' contention, invalidate the tax owed on the house.

*Id.* (emphasis supplied).

The Commission's final decision did not ignore *In re Appeal of Dickey*, but expressly distinguished that case from the facts here. The Commission found substantial evidence was presented to support its finding that "the Tax Assessor could have obtained valuations for the subject residence prior to issuing the Notices of Immaterial Irregularity for tax years 1995 through 2003." This finding of fact was based upon the Commission's recitation of the evidence Mrs. Morgan presented:

(1) the Taxpayer's husband listed the subject residence with the Henderson County Tax Office, effective January 1, 1993, as eighty percent (80%) complete and instructed the Tax Assessor to contact him if there were questions regarding his listing; (2) The Taxpayer's husband obtained all necessary permits during the construction of the subject residence; (3) After the subject property's original listing in January 1, 1993, the Tax Assessor conducted at least two countywide reappraisals, effective as of January 1, 1999 and January 1, 2003; and (4) An appraiser with the Henderson County Tax Office visited the site of the subject property during the time of the county's reappraisals. Thus, the Tax Assessor had ample information to know that a house was situated on the property.

The Commission concluded "the action of the Tax Assessor, under the facts and circumstances at issue . . . [is not] an immaterial irregularity *since his action in the matter does not constitute a clerical or administrative error*."

Mrs. Morgan presented, and the Commission found, substantial evidence tending to show the County was provided multiple opportunities to assess the property, but failed to do so. This evidence supports the Commission's conclusion that the action of the County Tax Assessor's Office was neither a "clerical or administrative error." *Id.*

IN RE APPEAL OF MORGAN

[186 N.C. App. 567 (2007)]

## V.  Adding Interest to Past Taxes

**[2]** Presuming *arguendo*, the dissenting opinion's application of *In re Appeal of Dickey*, correctly categorizes the actions of the County Tax Assessor's Office as an immaterial irregularity and the County may levy taxes upon Mrs. Morgan's residence for years 1995 through 2003, the County is barred from collecting any interest accrued during this time period. N.C. Gen. Stat. § 105-394 provides that immaterial regularities do not "invalidate *taxes* imposed upon any property." (Emphasis supplied). No provision in this statute supports the County's assertion that it is entitled to recover interest in addition to the property taxes, when non-payment was due to the gross and repeated failures to assess by the County Tax Assessor's Office.

In *In re Nuzum-Cross Chevrolet*, the taxpayer's business personal property was taxed at a lower rate than it should have been for three years due to a clerical error. 59 N.C. App. 332, 333, 296 S.E.2d 499, 500 (1982), *disc. rev. denied*, 307 N.C. 576, 299 S.E.2d 645 (1983). The tax assessor issued a notice of attachment and garnishment upon the taxpayer and the garnishee, First National Bank of Catawba County, which included the amount of unpaid taxes, plus penalties and interest fees. *Id.* After a hearing, the trial court issued an order directing the garnishee to remit the total taxes due *"minus any penalty and interest." Id.* (emphasis supplied). This Court affirmed the trial court's order. *Id.*

Nothing in this statute allows the County to attempt to collect interest and penalties in addition to back taxes allegedly owed, when the County grossly and repeatedly failed to assess the listed property. *Id.*

## VI.  Conclusion

"N.C. Gen. Stat. § 105-394 . . . is intended to cover cases where there is no dispute that but for the *clerical error*, the tax would have been valid." *In re Nuzum-Cross Chevrolet*, 59 N.C. App. at 334, 296 S.E.2d at 500 (emphasis supplied). Under our standard of review, the Commission's findings of fact are based upon substantial evidence in the whole record and those findings support its conclusion that the failure by the County Tax Assessor's Office to assess the value of the Morgans' residence for more than ten years after it was properly listed by Mr. Morgan, was not a minor clerical or administrative error. The Commission could properly conclude N.C. Gen. Stat. § 105-394 is inapplicable to these facts.

IN RE APPEAL OF MORGAN

[186 N.C. App. 567 (2007)]

As a reviewing Court, we only consider "whether the Commission's decision has a rational basis in the evidence." *Weaver*, 165 N.C. App. at 201, 598 S.E.2d at 593. "We may not substitute our judgment for that of the Commission even when reasonably conflicting views of the evidence exist." *Id.* The Commission's final decision holding that the County is barred from recovering property taxes and the interest and penalties thereon for tax years 1995 through 2003 is affirmed.

Affirmed.

Judge ELMORE concurs.

Judge GEER dissents by separate opinion.

GEER, Judge, dissenting.

The majority holds that a failure to list property cannot constitute an "immaterial irregularity" under N.C. Gen. Stat. § 105-394 (2005) unless the failure was due to a clerical or administrative error. I believe that the majority has inserted language into the statute. I would hold that the plain language of the statute without alteration and this Court's opinion in *In re Appeal of Dickey*, 110 N.C. App. 823, 431 S.E.2d 203 (1993), require reversal of the Property Tax Commission.

I agree with the North Carolina Association of County Commissioners' assertion in its amicus brief that the Commission was improperly attempting "to assert a public policy that is contrary to the policy adopted by the legislature." The Commission and the majority opinion have improperly imposed their view of appropriate public policy—fairness to individual taxpayers—to override other public policies promoted by the statute's plain language such as equality of taxation and reduction of tax rates. I, therefore, respectfully dissent.

---

This Court may reverse or modify a decision of the Property Tax Commission:

if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 105-345.2 (2005). I would hold that the Property Commission's decision was affected by error of law and is not supported by competent evidence.

N.C. Gen. Stat. § 105-394 provides:

Immaterial irregularities in the listing, appraisal, or assessment of property for taxation or in the levy or collection of the property tax or in any other proceeding or requirement of this Subchapter shall not invalidate the tax imposed upon any property or any process of listing, appraisal, assessment, levy, collection, or any other proceeding under this Subchapter..

The statute also lists examples of immaterial irregularities, including: "(3) The failure to list, appraise, or assess any property for taxation or to levy any tax within the time prescribed by law." The County contends that its failure to assess Ms. Morgan's house falls within this definition of an immaterial irregularity.

The Property Tax Commission, however, held that application of § 105-394(3) was "not proper under the facts and circumstances of this appeal." The Commission asserted that *Dickey* was distinguishable because, contrary to *Dickey*, in this case (1) "there is substantial evidence in this record to show that the Tax Assessor could have obtained valuations for the subject residence prior to issuing the Notices of Immaterial Irregularity for tax years 1995 through 2003" because the assessor had "ample information" to know of the house's existence, and (2) "[u]nlike the facts in the matter of *In re Dickey*, there is substantial evidence in this record to show that the Legislature did not intend for the action of the Tax Assessor, under the facts and circumstances at issue, to be an immaterial irregularity since his action in this matter does not constitute a clerical or administrative error." The Commission then concluded that applying § 105-394(3) to allow the County to recover back taxes would "violate[] the public policy of this State because a Tax Assessor should not be permitted to benefit from his own omissions or mistakes."

It is, however, the responsibility of the General Assembly to determine the public policy of the State. *See Rhyne v. K-Mart Corp.*, 358 N.C. 160, 169, 594 S.E.2d 1, 8 (2004) (holding that the legislative branch is, "without question," the policymaking agency of the State). It is also well settled that the meaning of any statute, such as § 105-394(3), is controlled by the intent of the legislature and that this intent is determined by first looking at the plain language of the statute. *Elec. Supply Co. of Durham, Inc. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991).

The plain language of the statute states that an immaterial irregularity includes a "failure to . . . assess any property for taxation . . . within the time prescribed by law." N.C. Gen. Stat. § 105-394(3). Contrary to the decision of the Property Tax Commission and the majority opinion, this language does not require that this failure be due to "a clerical or administrative error." Although the Commission asserts that this must have been the intent of the General Assembly, our Supreme Court has stressed that when a statute is unambiguous, "[w]e have no power to add to or subtract from the language of the statute." *Ferguson v. Riddle*, 233 N.C. 54, 57, 62 S.E.2d 525, 528 (1950). *Dickey* specifically held that N.C. Gen. Stat. § 105-394 had "clear and unambiguous language." 110 N.C. App. at 829, 431 S.E.2d at 207. We thus should not insert into the statute, as the Commission and the majority do, a further limitation that the failure to assess be the result of a clerical or administrative error separate from the failure to assess.

Although *Dickey* did reference an administrative error, nothing in *Dickey* holds that there must be a specific act that resulted in the failure to assess the property. Certainly, destruction of a house listing, as occurred in *Dickey*, is just as negligent as a failure to assess without an identified cause for the failure. Indeed, the Commission's decision and the majority opinion beg the question of what constitutes a clerical or administrative error sufficient to invoke N.C. Gen. Stat. § 105-394. This absence of clarity is due to the fact that the General Assembly never imposed such a requirement.

It is undisputed that, in the present case, the County failed to assess the Morgan residence within the time prescribed by law. Under the plain language of N.C. Gen. Stat. § 105-394(3), this failure constitutes an immaterial irregularity and did not, therefore, "invalidate the tax levied on the property." *In re Nuzum-Cross Chevrolet*, 59 N.C. App. 332, 333-34, 296 S.E.2d 499, 500 (1982), *disc. review denied*, 307

N.C. 576, 299 S.E.2d 645 (1983). I, therefore, believe the evidence and the law requires reversal of the Commission's decision.

The Commission, however, urges that a construction of § 105-394 to allow the County to recover property taxes and interest when Ms. Morgan had always paid her taxes promptly would be unfair. Yet, "[t]he duty of a court is to construe a statute as it is written. It is not the duty of a court to determine whether the legislation is wise or unwise, appropriate or inappropriate, or necessary or unnecessary." *Campbell v. First Baptist Church of the City of Durham*, 298 N.C. 476, 482, 259 S.E.2d 558, 563 (1979).

Further, the view of the Commission and the majority opinion overlooks the public policy advantages of construing the statute as written. As the North Carolina Association of County Commissioners explained in its brief:

Whatever the source or nature of the omission [to assess], the legislature has determined through G.S. § 105-394 that errors in listing and assessment are to be corrected when found. *This policy avoids the inequity of one property owner not being taxed on some or all of his or her property while all other property owners in that county are taxed.*

*The policy also avoids any incentive on the part of the property owner to allow an assessment oversight to persist.* That is, if a property owner knows that a listing or assessment error will be picked up sooner or later and that taxes will be due for the years in question, that property owner is more likely to bring any omission or other error to the attention of the county assessor's office.

Indeed, it has been the policy of the North Carolina Department of Revenue for years to encourage county assessors to correct all listings. *In this way, the tax rate for all taxpayers can be as low as possible.*

(Emphasis added.) It is the province of the General Assembly—and not this Court or the Property Commission—to determine whether these policies outweigh the unfairness to individual taxpayers.

Finally, the County also argues that the Commission erred in concluding the County was not entitled to interest on appellee's unpaid taxes. Taxes paid on or after their due date are "delinquent and are

subject to interest charges." N.C. Gen. Stat. § 105-360(a) (2005). As a general rule, "[*a*]*ll* assessments of tax . . . *shall* bear interest at the rate established pursuant to this subsection *from the time the tax was due* until paid." N.C. Gen. Stat. § 105-241.1(i) (2005) (emphasis added). I see no basis for excluding tax assessments arising as a result of immaterial irregularities from this general rule. Indeed, although the majority reaches a different conclusion, Ms. Morgan does not seriously contest this issue.

In closing, it may well be troubling that a taxing authority can, under the immaterial irregularity provisions of N.C. Gen. Stat. § 105-394, go back 10 years to assess property that the authority has neglected to assess in a timely fashion through no fault of the taxpayer. Whether a County should be able to do so is, however, a question for the General Assembly and not for the courts. It is our responsibility to apply the statute as written.